CARSON, PIRIE, SCOTT & COMPANY,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 13161.

United States Court of Appeals
Seventh Circuit.

Feb. 15, 1961.

Rehearing Denied March 27, 1961.

James E. S. Baker, Kenneth F. Burgess, Robert R. Frei, Chicago, Ill.; Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellant.

Charles K. Rice, Asst. Atty. Gen., John J. Pajak, Lee A. Jackson, Melva M. Graney, Attorneys, Tax Division, Department of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., Harvey M. Silets, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, an operator of retail department stores, seeks to recover part of the federal income and excess profits taxes paid for the fiscal years ending January 31, 1944, through 1948, through recomputation of its taxable income for those years by the retail inventory method on a last in, first out basis (popularly called "LIFO") although it was stipulated that plaintiff filed its returns for those years using the retail inventory method on a first in, first out basis (popularly called "FIFO") without any accompanying election to use LIFO.

Under FIFO the goods left in an inventory at the end of a year are assumed to be those last purchased. Under LIFO the goods left in an inventory at the end of a year are assumed to be those first purchased.

Plaintiff has used the retail method of inventory valuation for many years. Under that method, inventories are taken, recorded and maintained in terms of dollar amounts, broken down only by merchandising departments, rather than in terms of individual items of merchandise.

In 1939, the Internal Revenue Code, Section 22(d), 26 U.S.C.A. § 22(d), was amended to permit taxpayers to elect to use LIFO.[1] The statute provided that

---

1. Internal Revenue Code of 1939:
   "Sec. 22.  Gross Income.
   *　　*　　*　　*　　*
   "(c)  *Inventories.*  Whenever in the opinion of the Commissioner the use of

inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secre-

change to and use of LIFO be in accordance with such regulations as the Commissioner of Internal Revenue might prescribe as necessary to reflect income clearly. The Commissioner issued regulations permitting election of LIFO only if the taxpayer filed a statement of his election with his return for the taxable year at the close of which the method was first to be used.[2]

It is plaintiff's position that the Commissioner prevented plaintiff, and other users of the retail method, from resorting to LIFO because his regulations referred to goods specified "with particularity," and prescribed a method of determining LIFO cost by comparison of units of goods on hand at the beginning and end of the year, with no provision for adjustment of inventories taken under the retail method by use of a statistical price index, or otherwise.

In addition, conferences between officials of the Treasury Department and representatives of various retailers resulted in refusal to amend the regulations, the Commissioner having taken the position that retailers could not use LIFO.

Some seventy retailers did make timely election to use LIFO, adopting, in the absence of regulation therefor, such techniques as they deemed proper. Hutzler Brothers Company was one such retailer. Hutzler appealed the Commissioner's deficiency assessment to the Tax Court which held [8 T.C. 14 (1947)] that, contrary to the Commissioner's position, use of LIFO in conjunction with the retail method was not precluded. The Commissioner, accepting the Tax Court's decision, issued amendments to the LIFO regulations on March 4, 1948, making express provision for use of LIFO by users of the retail method,

---

tary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

"(d) *Method of inventorying goods.* (1) A taxpayer may use the following method (whether or not such method has been prescribed under subsection (c)) in inventorying goods specified in the application required under paragraph (2):

"(A) Inventory them at cost;

"(B) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquistion) to the extent thereof, and second, those acquired in the taxable year; and

"(C) Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their cost by the average cost method.

"(2) The method described in paragraph (1) may be used—

"(A) Only in inventorying goods (required under subsection (c) to be inventoried) specified in an application to use such method filed at such time and in such manner as the Commissioner may prescribe; and

"(B) Only if the taxpayer establishes to the satisfaction of the Commissioner that the taxpayer has used no procedure other than that specified in subpara-

graphs (B) and (C) of paragraph (1) in inventorying such goods to ascertain the income, profit, or loss of the first taxable year for which the method described in paragraph (1) is to be used, for the purpose of a report or statement covering such taxable year (i) to shareholders, partners, or other proprietors, or to beneficiaries, or (ii) for credit purposes.

"(3) The change to, and the use of, such method shall be in accordance with such regulations as the Commissioner, with the approval of the Secretary, may prescribe as necessary in order that the use of such method may clearly reflect income.

"(4) In determining income for the taxable year preceding the taxable year for which such method is first used, the closing inventory of such preceding year of the goods specified in such application shall be at cost."

2. Regulation 111, Section 29.22(d):
"Time and Manner of Making Election. —The elective method [LIFO] may be adopted and used if the taxpayer files with his return for the taxable year as of the close of which the method is first to be used * * * in triplicate on Form 970 [revised], and pursuant to the instructions prescribed thereon and to the requirements of this section, a statement of his election to use such method * * * *".

but making no change in the existing provisions for election to use LIFO.

Plaintiff filed its application for use of LIFO on December 29, 1951, to be applicable beginning with the close of its taxable year ending January 31, 1944, together with claims for refund for the taxable years ending January 31, 1944, through 1948. When the Commissioner disallowed these claims on the ground that plaintiff's election was untimely filed, plaintiff brought this action in the Federal District Court to recover such refund. The District Court held that plaintiff had failed to file timely election to use LIFO, and granted the defendant's motion to dismiss the plaintiff's complaint for failure to state a claim on which relief might be granted.

Plaintiff argues that the original LIFO regulations were inapplicable to users of the retail inventory method as they required the goods to be specified "with particularity" and the LIFO closing inventory to be determined by comparison of the number of units of goods on hand in opening and closing inventories; and, in addition, did not provide for grouping of goods by classes and use of statistical price indices. The plaintiff argues further that the Commissioner maintained, prior to the Hutzler decision, that retail method taxpayers could not use LIFO, and then after the Hutzler decision, found it necessary to amend the regulations. Thus plaintiff contends that the time limitation on election was likewise inapplicable. The 1948 amendments prescribed no time limit for election as to prior years. Hence plaintiff asserts that its 1951 election was timely.

The District Court relied on R. H. Macy & Co., Inc. v. United States, 2 Cir., 1958, 255 F.2d 884, rehearing denied, p. 890, certiorari denied 1958, 358 U.S. 880, 79 S.Ct. 119, 3 L.Ed.2d 110, reversing D.C.S.D.N.Y.1957, 148 F.Supp. 377. Macy's position was practically identical to that of plaintiff here. The District Court there granted judgment for Macy. That judgment was reversed on appeal. The Second Circuit stated (at page 889):

> "Ultimately Macy's argument is that it failed to file a timely election because the Commissioner maintained the position that LIFO was not available to users of the 'retail method.' Although this argument evokes a certain sympathy it is unavailing as an excuse for Macy's delinquency."

Plaintiff concedes that Macy is squarely in point, but submits that it is unsound and should not be followed.

Plaintiff considers it unconscionable that taxpayers who abided by the Commissioner's interpretation of the statute and regulations did so at their peril. Plaintiff asserts that it is unjust for relief to be available only to those taxpayers who disregarded the Commissioner's interpretation, prepared their own price indices for conversion of retail inventories to LIFO, filed their elections and returns, and paid their taxes for 1944 and subsequent years, on a LIFO basis, undeterred by possible liabilities for interest and penalties (had the Commissioner been determined to be right) and who contested in the Tax Court, the Commissioner's assessment of deficiencies.

However, we must also consider that those taxpayers who did make timely election and who ultimately succeeded in maintaining their position in the Tax Court were bound thereafter by their election to use LIFO for good or evil. To quote the Court in Macy (255 F.2d at page 885):

> "In a period of stable prices the application of either theory renders the same result. But during an inflationary period, LIFO is distinctly advantageous to the taxpayer, for, in effect, he is not required to include as profit increases in value of inventory."

We might add that the converse is also true; in a deflationary period, a taxpayer, fenced in by his prior election,

might find LIFO the cause of serious consequences in additional tax.

Had plaintiff prevailed in this case, plaintiff would have been making its decision for 1944 from the vantage point of 1951 hindsight.

We have considered all other points made by plaintiff in reaching our conclusion that the District Court's judgment must be affirmed.